Joseph J. BOTICA, as Agent for: the Structural Iron Workers Local No. 1 Welfare Fund; the Structural Iron Workers Local No. 1 Pension Trust Fund; the Joint Apprenticeship Training and Journeymen Retraining Fund; the Mid-America Pension Fund; the Associated Steel Erectors Industry Promotion Fund; the Annuity Account; the Structural Iron Workers Local No. 1 and the Wage Savings Fund, Plaintiff,

v.

**FLOYD STEEL ERECTORS, INC., Defendant.**

**No. 77 C 3726.**

United States District Court, N. D. Illinois, E. D.

Jan. 31, 1980.

---

**92.** *See* Defendant's Exhibits 4 and 5.

**93.** *Id.*, 7(a).

**94.** *Id.*, 7(b).

**95.** *Id.*, 7(d).

**96.** *Id.*, 7(c).

**97.** Defendant's Exhibit 7(c).

Charles Orlove and Nancy Berger, Chicago, Ill., for plaintiff.

George W. Moehlenhof, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

Plaintiff brings this action pursuant to section 301(a) of the National Labor Relations Act, 29 U.S.C. § 185(a). Pending before the Court are plaintiff's motion to confirm an arbitration award and for summary judgment and defendant's motion to vacate the arbitration award.

## I

### Introduction

Plaintiff is the Administrator of the Structural Iron Workers Fund Disbursement Office (Fund Disbursement Office). The Fund Disbursement Office is created pursuant to the terms of successive contracts (the "Local-ASE Agreements") entered into between the Associated Steel Erectors of Chicago, Illinois (ASE) and Local Union Number 1 of the International Association of Bridge, Structural and Ornamental Iron Workers (the "Local"). E. g., Plaintiff's Exhibits IA and IB. Employers who are parties to the Local-ASE Agreement are required to make certain payments to the various employee funds established by that agreement. These payments are to be made to the Fund Disbursement Office.

The Local-ASE Agreement contains a final and binding arbitration clause which is applicable to all disputes arising under that agreement. Plaintiff's Exhibit IA, § 40. The arbitration clause provides that disputes should be resolved, if possible, by a meeting between a representative of the employer and the business agent of the Local. Id., § 40. If the meeting does not produce an agreement, the Local-ASE Agreement provides that either party may refer the matter to a Joint Arbitration Board (Board) consisting of seven persons designated by the Local and seven persons designated by ASE. The Local-ASE Agreement requires the Board to render a decision within five days from the referral to it of the grievance. If the Board is deadlocked or fails to reach a decision within the required time period, the Local-ASE Agreement provides that the Board shall select an arbitrator from a list submitted by the American Arbitration Association. Id.

Defendant Floyd Steel Erectors, Inc. (Floyd) has at all times material to this action been engaged as an employer in the structural iron industry. On March 22, 1972 defendant entered into an agreement (the "International Agreement") with the International Association of Bridge, Structural and Ornamental Steel Workers, AFL–CIO (the "International"). Plaintiff's Exhibit IC. The International Agreement provides, inter alia, that it would continue in effect until three months written notice from either party to the other, id., ¶ 1, that it would cover all work performed by plaintiff in all places that is within the jurisdiction of the International, id., ¶ 2, and that plaintiff recognizes the International as the sole and exclusive bargaining representative for all of plaintiff's employees performing work within the jurisdiction of the International. Id., ¶ 3. Paragraph 6 of the International Agreement reads as follows:

The Employer agrees to abide by the General Working Rules of this Association [i. e., the International] and to pay the scale of wages, work the schedule of hours and conform to the conditions of employment in force and effect in the locality in which the Employer is performing or is to perform work, provided that such conditions are not in violation of the National Labor Relations Act.

Id., ¶ 6. Finally, paragraph 9 of the International Agreement sets forth procedures for resolving disputes between the parties as to the scale of wages. The International

Agreement, however, reflects no agreement as to the resolution of any other types of disputes that may arise. The only document appended to the International Agreement is a referral clause.

On July 29, 1975 defendant entered into an agreement with the Local (the "Compliance Agreement") whereby defendant agreed to be bound by the Local-ASE Agreement then in force and effect and all subsequent renewals and modifications of that agreement. The Compliance Agreement makes specific mention of the various employer funds established by the Local-ASE Agreement.

Plaintiff instituted this action, in his capacity as Administrator for the Fund Disbursement Office,[1] to recover alleged delinquencies in defendant's contributions to the Fund Disbursement Office and liquidated damages[2] for the period from January 1, 1973 to December 31, 1975. It is undisputed that during this period the applicable Local-ASE Agreements required employers who were parties thereto to contribute to the various employee funds in amounts to be determined by the number of those hours paid to their employees at the hourly rates set by those agreements, provided the employees were performing work within the jurisdiction of the agreements. It is also undisputed that during this period defendant made the requisite contributions for all of those hours paid its employees who were paid ironworker's wages with the exception of those hours paid to those employees of defendant who are the subject of the dispute herein. The alleged delinquencies concern work performed by employees of defendant who, although paid ironworker's wages, did not, defendant argues, perform work which was otherwise within the craft jurisdiction of the Local. Specifically, plaintiff seeks to recover contributions with respect to bonuses paid of one extra hour for each day an employee served as a foreman (pusher bonuses) and with respect to steel fabrication work performed in defendant's shop.

Subsequent to the filing of the instant action, plaintiff sought to invoke the arbitration procedures of the Local-ASE Agreement. There appear in the record two written grievances which were apparently submitted to the Board on behalf of the Local. Plaintiff's Exhibit IE; Defendant's Exhibit 1(c). One grievance is dated October 5, 1978, Plaintiff's Exhibit IE, while the copy of the other grievance before the Court bears no date. Defendant's Exhibit 1(c).

During the summer of 1978, representatives of both parties met to review audits of defendant's payroll records. The parties dispute what transpired during this meeting. Defendant alleges that an offer was made by plaintiff to settle this action if defendant would permit plaintiff to inspect defendant's shop fabrication operation. Floyd Affidavit, ¶¶ 31–39. Defendant states that it accepted this offer and that plaintiff was permitted access to defendant's shop. *Id.* Plaintiff denies ever making such an offer. Orlove Affidavit, ¶ 3e.

On April 18, 1979, the Board met without reaching a decision. The Board again met on September 6, 1979. Present at the September 6, 1979 meeting were six representatives of the Local and six representatives of the ASE. Apparently, in part because of a dispute between defendant's representative and the Board over the participation of defendant's counsel in the meeting, defendant's representative left the meeting before it was adjourned. However, before defendant's representative left the meeting, he read a prepared statement, contending, *inter alia*; (1) that the Board had no jurisdic-

---

1. The Local-ASE Agreement empowers plaintiff to bring an action to recover delinquent payments. Plaintiff's Exhibit IA, § 34. Moreover, the courts have characterized administrators of employee funds created by labor agreements as third party beneficiaries with standing to bring actions concerning contributions. *See, e. g., Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960).

2. The Local-ASE Agreement provides that in the event an employer is delinquent in making his contributions to the Fund Disbursement Office, liquidated damages may be assessed against the employer. Plaintiff's Exhibit IA, § 34.

tion to hear the grievance submitted on behalf of the Local because defendant was not a ·member of the ASE; (2) that the grievance relates to time periods when defendant had no contract with the Local; (3) that the dispute underlying the grievance had been settled pursuant to an agreement between plaintiff and defendant; (4) that the grievance was filed untimely; and (5) that the Board's authority to decide the grievance had expired since it had not reached a decision within five days of the date the grievance was submitted to it. Defendant's Exhibit 1(f). On September 14, 1979, defendant received the decision of the Board. The decision read as follows:

> The decision of the Joint Arbitration Board is that the interpretation of Working Rules is that any employer paying ironworkers wages shall pay fringe benefits on all hours paid regardless of work performed.

Defendant's Exhibit 1(e). Attached to the decision was the grievance dated October 5, 1978. *Id.*

## II

### *The Applicable Law*

#### A

#### *Jurisdiction*

29 U.S.C. § 185(a) confers jurisdiction upon the federal courts to adjudicate controversies arising from labor contracts. 9 U.S.C. § 9 specifically empowers the federal courts to confirm arbitration awards. Accordingly, the Court finds that plaintiff has properly invoked the Court's jurisdiction.

#### B

#### *Arbitration*

. **[1–6]** That there exists a strong federal policy in favor of the resolution of labor disputes by agreed upon procedures is well-settled. *E. g., United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Consequently, the power of federal courts to resolve disputes which are arguably subject to an arbitra-

tion clause is carefully circumscribed. Generally, such disputes are brought to the judicial forum by way of an action to compel arbitration pursuant to an arbitration clause or by way of an action to affirm or vacate an arbitration award made pursuant to an arbitration clause. In either instance, it is entirely within the court's province to determine whether the dispute is subject to arbitration according to the terms of the applicable bargaining agreement. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). In this connection, all doubts as to the arbitrability of a dispute are to be resolved in favor of arbitration. *Id.* Having found a dispute to be arbitrable, the court, with limited exceptions, has no power to either interpret the collective bargaining agreement in other respects or, if an arbitration award has been made, review the merits of the award. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. at 596, 80 S.Ct. at 1360 (1960). This principle of non-reviewability also extends to the resolution of any disputes concerning a parties compliance with any procedural prerequisites imposed by the bargaining agreement with respect to arbitration. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557–58, 84 S.Ct. 909, 918–19, 11 L.Ed.2d 898 (1964). Moreover, once it has determined a dispute to be arbitrable, a court must stay any judicial proceedings pending the completion of any arbitration proceedings, provided the party applying for the stay is "not in default in proceeding with such arbitration." 9 U.S.C. § 3.

■ A court may review the merits of an arbitration award to the extent that it is not rooted in interpretation of the applicable bargaining agreement, *United Steelworkers of America v. Enterprise· Car & Wheel Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361, or to the extent it is arbitrary or capricious. *Cannon v. Consolidated Freightways Corp.,* 524 F.2d 290, 295 (7th Cir. 1975). Moreover, although an arbitrator need not give detailed reasons for his decision, *United Steelworkers of America v.*

*Enterprise Car & Wheel Corp.*, 363 U.S. at 598, 80 S.Ct. at 1361, courts will not enforce an arbitration award where the award is insufficiently clear and specific in its meaning and import. *E. g., United Mine Workers of America v. Barnes & Tucker Co.*, 561 F.2d 1093, 1097–99 (3d Cir. 1977). In such instances, the appropriate course for the court to take generally is to remand the dispute to the arbitrator. *Id.*

## C

### Summary Judgment

■ Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Any doubt as to the existence of a material fact is to be resolved against the movant. *Moutoux v. Gulling Electric Co.*, 295 F.2d 573, 576 (7th Cir. 1961).

## III

*Plaintiff's Motion to Confirm the Arbitration Award and for Summary Judgment and Defendant's Motion to Vacate the Arbitration Award*

The Court concludes that the motions pending before it require it to address the following questions: (1) whether the parties settled the instant dispute prior to the Board's decision; (2) to what extent the dispute herein is subject to arbitration; (3) to the extent the dispute is arbitrable, whether plaintiff waived his right to arbitrate; and (4) whether the Board's decision, to the extent it is applicable to the dispute herein, is sufficiently specific to lend itself to judicial enforcement.

## A

### Settlement

Defendant argues that the dispute herein was settled as a result of the meeting between the representatives of the parties. Therefore, defendant argues, plaintiff was in violation of the Local-ASE Agreement in proceeding with arbitration, *see* Plaintiff's

Exhibit IA, § 40, and, in any event, the parties made an accord and satisfaction which causes defendant to be discharged from the debt alleged by plaintiff. *See Sears, Sucsy & Co. v. Insurance Company of North America*, 392 F.Supp. 398, 404–05 (N.D.Ill.1974). Plaintiff denies that he ever settled the instant dispute.

■ The Court finds that the factual question thus posed with respect to settlement is of no import to the issues before it since the Court today holds that a portion of plaintiff's claim is arbitrable. *See* Part III B, *infra*. Therefore, insofar as defendant's settlement argument relies upon section 40 of the Local-ASE Agreement, it is clearly subject to resolution by the Board, not the Court. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. at 557, 84 S.Ct. at 918; *accord, Mogge v. International Association of Machinists*, 454 F.2d 510 (7th Cir. 1971).

■ Defendant's reliance upon the Illinois common law of accord and satisfaction is misplaced. Actions brought under 29 U.S.C. § 185(a) are governed wholly by federal law. *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957). In an action brought under section 185(a) a court may, when appropriate, fashion federal law by looking to principles of state law. *Id.* at 457, 77 S.Ct. at 918. However, defendant has cited no authority holding it appropriate to apply the common law of accord and satisfaction to an action of this type. Nor has defendant persuasively argued to this Court that it should do so in the instant case. More importantly, since virtually the same argument which defendant advances on an accord and satisfaction theory will, pursuant to the Court's holding today, be addressed by the arbitration process provided for in the Local-ASE Agreement, it would be duplicitous for the Court to also endeavor to resolve the settlement question posed by defendant. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. at 558, 84 S.Ct. at 918.

If the Court ultimately finds that the entirety of the instant dispute is arbitrable,

any finding of the Board on the settlement issue raised by defendant will apply with equal force to that portion of plaintiff's claim which the Court today declines to find arbitrable. On the other hand, if the Court finds that the remaining portion of plaintiff's claim is not arbitrable, defendant's settlement argument becomes, as to that portion of plaintiff's claim, superfluous.[3]

## B

### *Arbitrability of the Instant Dispute*

■ Whether the dispute herein is subject to arbitration is a question that can only be answered by examining the three agreements pertinent to the dispute; i. e., the International Agreement, the Compliance Agreement, and the Local-ASE Agreement. Plaintiff contends that defendant was bound by the final and binding arbitration clause contained in the Local-ASE Agreement as of March 22, 1972 by virtue of paragraph 6 of the International Agreement and, additionally, as of July 29, 1975 by virtue of the Compliance Agreement. Defendant, on the other hand, denies that its supervisory or in-shop personnel were, at any time relevant to this action, members of any bargaining unit subject to the jurisdiction of the International or the Local.

The Court, however, is convinced that the question of whether defendant should have after July 29, 1975 made contributions both on the pusher bonuses and on the hours paid to its in-shop employees is one that is subject to resolution by the arbitration procedures set forth in the Local-ASE Agreement. The Compliance Agreement clearly

bound defendant to all the terms of the Local-ASE Agreement.[4] *See, e. g., Hinson v. NLRB*, 428 F.2d 133 (8th Cir. 1970). As stated, it is undisputed that the pusher bonuses and the hours paid the in-shop employees were paid according to the wage scales established in the Local-ASE Agreement. Arguably, the words "hours paid" contained in the relevant sections of the Local-ASE Agreement, e. g., Plaintiff's Exhibit IA, §§ 12–13, only pertain to employees who come within the terms of the Agreement by virtue of the type of work they perform, as opposed to those employees whose only nexus with the terms of the agreement is the fact that they are paid according to the wage scales contained therein. However, it is also arguable that employees who are engaged in ironwork fall within the jurisdiction of the Local by virtue of the fact that they are paid according to the wage scales contained in the Local-ASE Agreement. Therefore, bearing in mind that doubts as to the arbitrability of a matter are to be resolved in favor of arbitration, *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53, the Court finds that the issue of whether plaintiff, after July 1975, was bound to make contributions on the pusher bonuses and the hours paid in-shop employees is arbitrable.

■ In order to determine whether or not the instant dispute is arbitrable with respect to the period from January 1, 1973 to July 22, 1975, the Court must first decide whether or not the parties to the International Agreement intended that defendant should be bound by the Local-ASE Agree-

---

3. The Court finds inescapable the conclusion that plaintiff has no claim at all to the extent plaintiff's claim is not arbitrable. This is so because any contribution obligation on the part of defendant must, on the facts of this case, arise from it being bound to the Local-ASE Agreement. If defendant is bound by the Local-ASE Agreement, it is likewise bound by the comprehensive mandatory arbitration clause contained therein.

4. The Compliance Agreement incorporates by reference the Local-ASE Agreement and, moreover, the former agreement makes specific mention of the various employee funds established under the latter agreement. Plaintiff's Exhibit ID. Defendant's argument that, notwithstanding the above, the Compliance Agreement does not comport with the requirement of 29 U.S.C. § 186(c)(5)(B) that the contribution scheme for all employee funds be specifically set forth in a written agreement is without

ment.[5] Plaintiff bears the burden on this issue. *E. g. United Brotherhood of Carpenters & Joiners of America v. Bracy Development Co.*, 321 F.Supp. 869, 875 (W.D.Ark. 1971). This question is not ripe for resolution upon the basis of the present record. Defendant denies that it agreed to be bound by the Local-ASE Agreement pursuant to the International Agreement. Plaintiff, on the other hand, contends that paragraph 6 of the International Agreement, quoted in full *supra*, binds defendant to the terms of the Local-ASE Agreement. In support of this contention, plaintiff argues that the fact that defendant made contributions to the funds during this period evidences defendant's own understanding that the International Agreement bound defendant to the Local-ASE Agreement.

That defendant intended to be bound by the Local-ASE Agreement and its arbitration clause is not, to the Court's satisfaction, clear from the face of paragraph 6 of the International Agreement. Further, the fact that defendant did make contributions to the funds during the January 1, 1973 to July 29, 1975 period is not conclusive on the question of whether it was bound by the Local-ASE Agreement during that period. *E. g., Moglia v. Geoghegan*, 403 F.2d 110 (2d Cir. 1968), *cert. denied*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969). Therefore, because there is a disputed factual issue herein as to the intent of the parties to the International Agreement concerning the asserted incorporation into that agreement of the Local-ASE Agreement, plaintiff's motion must be denied insofar as it seeks a final resolution of the January 1, 1973 to July 29, 1975 portion of plaintiff's claim.[6] *See, American Federation of Technical Engineers v. Western Electric Co.*, 508 F.2d 106 (7th Cir. 1974).

merit. *E. g., Hinson v. NLRB*, 428 F.2d 133 (8th Cir. 1970).

5. Neither party has asserted that paragraph 9 of the International Agreement requires arbitration of any portion of the instant dispute.

6. The Court notes, however, that defendant's contentions that it can not be bound by the

## C

### Waiver Issue

Defendant argues that to the extent the instant dispute is arbitrable, the Board's decision should be vacated because plaintiff waived his right to arbitrate. Defendant asserts that by reason of plaintiff's failure to seek arbitration until approximately one year after he instituted this action and his alleged participation in settlement negotiations with defendant prior to the institution of the arbitration process, plaintiff has waived his right to arbitrate. The authority which defendant principally relies upon is 9 U.S.C. § 3.

Defendant's reliance upon 9 U.S.C. § 3 is misplaced. The only effect of that provision is to grant a court discretion, which it would not otherwise possess, *C. Itoh & Co. v. Jordan International Co.*, 552 F.2d 1228, 1231 (7th Cir. 1977), to deny a request for a stay of judicial proceedings pending arbitration proceedings where the party applying for the stay "is not in default in proceeding with such arbitration." 9 U.S.C. § 3. *See N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 728 (8th Cir. 1976); *Halcon International, Inc. v. Monsanto Australia, Ltd.*, 446 F.2d 156, 161 (7th Cir. 1971), *cert. denied*, 404 U.S. 949, 92 S.Ct. 286, 30 L.Ed.2d 266 (1972).

A right to arbitrate, like most other rights created pursuant to contract, may be waived. *E. g., Cornell & Co. v. Barber & Ross Co.*, 123 U.S.App.D.C. 378, 379, 360 F.2d 512, 513 (D.C.Cir.1966). However, whether or not a party has waived his right to arbitrate is a species of those procedural issues whose resolution resides solely within the jurisdiction of the arbitrator. *N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d at 728; *Halcon International, Inc.*

Local-ASE Agreement because it did not ever sign the Local-ASE Agreement or because it was never a member of the ASE, are both without merit. *E. g., Hinson v. NLRB*, 428 F.2d 133 (8th Cir. 1970); *William Dunbar Co. v. Painters & Glaziers District Council No. 51*, 129 F.Supp. 417 (D.D.C.1955).

*v. Monsanto Australia, Ltd.*, 446 F.2d at 161. *See generally, John Wiley & Sons, Inc. v. Livingston*, 376 U.S. at 557, 84 S.Ct. at 918 (1963).

## D

### Enforceability of the Arbitration Award

The final question which the Court addresses is whether, to the extent the Court has found the instant dispute to be arbitrable, the decision rendered by the Board is amenable to judicial enforcement. The short answer to this question is that the decision of the Board is no award at all. The Court is fully mindful of the strong policy of deferring to the decisions of arbitrators and, further, to the absence of a requirement that arbitrators must provide detailed reasons in support of their awards. However, the decision of the Board is fatally unspecific in view of the rather complex issue presented to it by the facts of this case. *See United Mine Workers of America v. Barnes & Tucker Co.*, 561 F.2d 1093, 1097–99 (3d Cir. 1977). Moreover, although the Board's decision arguably interprets the Local-ASE Agreement so as to resolve the instant dispute in plaintiff's favor, the Board made no particular award at all.

■ Further, in view of the substantial procedural objections raised by defendant to the processing of the grievance, the Court finds that the Board should have afforded defendant some sort of explanation of its ruling upon those objections. *Galt v. Libbey-Owen-Ford Glass Co.*, 397 F.2d 439 (7th Cir. 1968). At the meeting of the Board held on September 6, 1979 de-fendant objected, among other things, to the Board rendering a decision on the grounds (1) that the Board had failed to render a decision within five days of the submission of the grievance to it, and (2) that the dispute underlying the grievance had been settled pursuant to a meeting between representatives of the parties.[7] Defendant's Exhibit 1(f). However, the Board's decision in no way indicates that the Board considered these defenses. *See* Plaintiff's Exhibit 1A, § 40; *Galt v. Libbey-Owen-Ford Glass Co.*, 397 F.2d 439 (7th Cir. 1968). Although a court will not generally impose upon an arbitration process greater procedural fairness than that bargained for in the applicable agreement,[8] *Merchant's Despatch Transportation Corp. v. System Federation Number One Railway Employees Department*, 447 F.Supp. 799, 802 (N.D. Ill.1978), the defendant clearly bargained for, for example, a resolution by the Board of any grievance submitted to it within five days of submission. Plaintiff's Exhibit IA, § 40. Accordingly, defendant was entitled to some sort of explanation as to the Board's apparent failure to abide by this provision of the Local-ASE Agreement. *Galt v. Libbey-Owen-Ford Glass Co.*, 397 F.2d 439 (7th Cir. 1968).

■ In short, the Court finds that the decision of the Board is insufficiently specific to permit this Court to make an intelligent ruling in this action. Accordingly, to the extent the dispute herein is arbitrable, it is remanded to the Board so that the Board may render a decision which is susceptible to further judicial treatment.[9]

---

**7.** Defendant also objects to the fact that the Board on September 6, 1979 was comprised of 12 representatives, rather than 14 as stipulated to in section 40 of the Local-ASE Agreement. Plaintiff's Exhibit IA, § 40. This objection also appears to be one whose resolution is within the province of the Board; however, defendant apparently failed to make this particular objection at the Board meeting. Defendant's Exhibit 1(f). *See Mogge v. International Association of Machinists*, 454 F.2d 510 (7th Cir. 1971). Defendant also makes a conflict of interest argument with respect to certain members of the Board. This issue is also within the province of the Board. *Behring International, Inc. v. Local 295 International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 449 F.Supp. 513, 517 (E.D.N.Y.1978).

**8.** In this connection, the Court notes that defendant's objection to the Board's exclusion of counsel from the meeting of September 6, 1979 has no merit in that that procedure is clearly one which defendant bargained for. Plaintiff's Exhibit IA, § 40.

**9.** If the Board should find that it can not render a decision because of the applicable time limits, Plaintiff's Exhibit IA, § 40, then, of course, the issues found herein to be arbitrable should be resolved by an arbitrator. *Id.*

*United Mine Workers of America v. Barnes Tucker Co.*, 561 F.2d 1093, 1099 (3d Cir. 1977); *Galt v. Libbey-Owen-Ford Class Co.*, 397 F.2d 439 (7th Cir. 1968).

## IV

### Conclusion

In view of the above holdings of the Court and the present posture of the case, the Court is of the opinion that the most expedient resolution of this matter would be to immediately remand to the Board those issues found herein to be within its jurisdiction to resolve. Pending a decision of the Board, the Court will, *sua sponte*, stay further proceedings in this action.[10] To do otherwise would run the risk of the duplicitous expenditure of judicial resources. More specifically, there will be no need to resolve the question of whether that portion of plaintiff's claim which concerns the January 1, 1973 to July 29, 1975 period is arbitrable, if the Board should decide plaintiff's claim, as to the July 29, 1975 to December 31, 1975 period, in defendant's favor. *See* note 3 *supra*.

If the Board resolves the latter issue in plaintiff's favor, it obviously will only be able to make an award covering the July 29, 1975 to December 31, 1975 period. However, in the event the Board so rules, and further, the Court ultimately decides that the defendant was also bound to arbitrate as to the remainder of plaintiff's claim, a summary judgment in plaintiff's favor would likely be appropriate at that time as to the remainder of his claim, provided the Board's decision is susceptible to judicial enforcement.

In summary, the Court grants plaintiff's motion for summary judgment insofar as his motion seeks a finding that that portion of plaintiff's claim which pertains to the July 29, 1975 to December 31, 1975 period is arbitrable. The Court denies summary judgment on the issue of arbitrability as to that portion of plaintiff's claim which concerns the January 1, 1973 to July 29, 1975

period. The Court further holds that the decision of the Board rendered on September 1979 is insufficiently specific to enable judicial enforcement. Accordingly, the Court remands the issues found herein to be arbitrable to the Board and stays further proceedings in the instant action pending the Board's resolution of those issues.

Finally, the Court notes that resolution of the issues presented to it by the parties' motion has brought to the Court's attention the procedural missteps taken by the parties involved in this action. Because, as the above discussion indicates, the law applicable to this case is now well-settled, resolution of the dispute underlying this litigation should have taken a well-defined, more economical path. Once it was evident to plaintiff that defendant disputed that it was bound by the Local-ASE Agreement, plaintiff should have brought an action under 29 U.S.C. § 185(a), which was limited in its scope to the question of whether the dispute was arbitrable. To the extent the Court found the dispute to not be subject to arbitration, the matter would have been at an end. *See* note 3, *supra*. Any portion of the dispute found to be arbitrable, could have been submitted to arbitration and this action, upon a proper application, could have been stayed pending arbitration. 9 U.S.C. § 3. With the aid of a judicial determination of arbitrability it is likely that the arbitration process would have been a more cooperative venture than it has been to date. Thereafter, if necessary, the parties could have returned to this forum to seek a judicial ruling upon the arbitration award.

---

**10.** In the event any party is of the opinion that a stay would not be appropriate at this time,

the Court invites a properly supported motion to reconsider.