MILWAUKEE TYPOGRAPHICAL UNION NO. 23, Plaintiff-Appellee,

v.

NEWSPAPERS, INC., Defendant-Appellant.

No. 80–1272.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1980.

Decided Jan. 23, 1981.

Rehearing and Rehearing En Banc Denied March 31, 1981.

---

David C. Christensen, Milwaukee, Wis., for defendant-appellant.

Gilbert A. Cornfield, Cornfield & Feldman, Chicago, Ill., for plaintiff-appellee.

Before PELL, Circuit Judge, SKELTON, Senior Judge,* and WOOD, Circuit Judge.

PELL, Circuit Judge.

This action arose from a labor dispute between Newspapers, Inc. (Employer), a newspaper publisher in Milwaukee, Wisconsin, and its labor organization representing the Employer's composing room employees, Milwaukee Typographical Union No. 23 (Union). In 1976, the Employer installed a video display terminal (VDT) system in its editorial departments which introduced electronic preparation, editing, and transmission of newspaper copy. The Union sought arbitration claiming that the introduction of the VDT system fell within the collective bargaining agreement's jurisdictional language, thereby compelling the Employer to bargain about the system's impact. The dispute was submitted to arbitration. On March 29, 1979, Arbitrator Warns decided that while the Employer was entitled to install the VDT system, it was obligated to negotiate with the Union regarding the system's "impact" upon composing room work. The arbitrator directed the parties to bargain and to return to arbitration after 60 days if they could not reach an agreement.

On August 17, 1979, the Union petitioned the district court for enforcement of the award pursuant to the Labor-Management Relations Act, 29 U.S.C. § 185, and the United States Arbitration Act, 9 U.S.C. §§ 1–14. In lieu of an answer, the Employer filed a motion to dismiss in accordance with Federal Rule of Civil Procedure 12(b)(6). The Union filed a reply to the Employer's motion and the Employer, in turn, filed a reply brief. No motion for summary judgment ever was filed.

In the district court's January 31, 1980, Decision and Order, the court denied the Employer's motion to dismiss and granted enforcement of the arbitration award. The Employer argues on appeal that the district court's judgment violated due process because the court converted the Employer's motion to dismiss into a motion for summary judgment without prior notice to the parties, and without affording the Employer an opportunity to file evidentiary material in accordance with Fed.R.Civ.P. 56.[1] Alternatively, the Employer contends that the arbitration award is unenforceable because the arbitrator exceeded his authority, 482 F.Supp. 1238 (D.C.).

I.

The parties vigorously disagree on the applicability of the United States Arbitra-

---

* Senior Judge Byron G. Skelton of the United States Court of Claims is sitting by designation.

1. While the Employer did not petition Judge Reynolds to set aside his order pursuant to Fed.R.Civ.P. 60, the Employer did raise this due process argument at the district court level in its brief in support of its motion for a stay pending appeal. The court denied that motion.

tion Act to the facts of this case.[2] The Union argues that the Act applies and seems to theorize that Fed.R.Civ.P. 81(a)(3) preempts normal procedure under Rules 12(b) and 56. Rule 81(a)(3) stipulates that the Federal Rules of Civil Procedure apply to proceedings under the Arbitration Act only to the extent that matters of procedure are not provided for in that Act.

*The Applicability of the Arbitration Act*

As this court recently noted in *Teamsters Local 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1026 (7th Cir. 1980), the circuits are divided over whether the Arbitration Act applies to collective bargaining agreements because § 1 of the Act explicitly excludes "contracts of employment of ... workers engaged in foreign or interstate commerce" from the Act's coverage. District courts in this circuit, however, have applied 9 U.S.C. § 9 in proceedings to confirm arbitration awards made pursuant to collective bargaining contracts. *Botica v. Floyd Steel Erectors, Inc.*, 485 F.Supp. 334 (N.D.Ill.1980); *Teamsters Local 364 v. Ruan Transport Corp.*, 473 F.Supp. 298 (N.D.Ind. 1979). This court has held that the Act's exclusion relates only to workers in transportation industries. *Pietro Scalzitti Co. v.*

*Int'l Union of Operating Engineers, Local 150*, 351 F.2d 576, 579–80 (7th Cir. 1965).

Even assuming that § 1 poses no bar in this case, the Employer nonetheless points out that § 9 of the Act allows enforcement of an arbitration order only "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration...." In this case the labor agreement contains no express statement authorizing the entry of judgment.

The agreement contemplated by § 9, however, need not be explicit. In *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1273 (7th Cir. 1976), for example, this court held that the parties were "deemed to have consented to entry of judgment ... as required by 9 U.S.C. § 9" because their agreement stipulated that arbitration proceedings would be conducted in accordance with the American Arbitration Association's (AAA) rules which did provide such consent.

While the contract in the present case does not adopt AAA rules, it does provide that any decision of the arbitration board "shall be final and binding upon both parties."[3] Several courts have found such

2. In its complaint the Union sought application of both the Arbitration Act and § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. In its brief in support of its motion to dismiss, the Employer predicated jurisdiction solely upon the Labor-Management Relations Act, noting that "[s]ince it is uncontroverted that this Court has jurisdiction by reason of § 301, Petitioner's allegations respecting the United States Arbitration Act ... are redundant and need not be considered." Contrary to the Employer's allegations on appeal, however, the Union's reply in the district court reiterated that it sought application of both Acts, thereby implicitly rejecting the Employer's narrowed interpretation.

The district court based its jurisdiction in its January 31, 1980, enforcement order explicitly upon § 301 without mentioning the Arbitration Act. Subsequently, in its order denying a stay pending appeal, in response to the Employer's contention that it was denied due process, the court again predicated jurisdiction on § 301. Although the court alluded to Rule 81(a)(3), its analysis suggested that the enforcement award was appropriate because no issue of material

fact existed, not because Rule 81(a)(3) and Title 9 preempted Rules 12(b)(6) or 56.

3. Section 7 of the collective bargaining contract provides, in part, that a

standing committee of two representatives of the Publisher ... and a committee of two representing the Union shall be selected.... To this committee shall be referred all questions that may arise regarding this contract or any alleged violation thereof, which cannot be settled otherwise.... If the committee does not reach an agreement ... the questions in dispute shall ... be submitted to arbitration.... The arbitration board shall consist of two representatives of the Publisher and two representatives of the Union, the four to select a fifth member who shall act as chairman of the board. *Said fifth member may be selected in any manner agreed upon by the four members, but if ... the four members are unable to agree upon a fifth member, he shall be selected ... in accord*ance with rules of the American Arbitration Association.... *The decision of this board shall be final and binding upon both parties* .... (Emphasis added.)

language sufficient to imply consent to the entry of judgment on an arbitration award under § 9. *Kallen v. District 1199, Nat'l Union of Hosp. Care Employees,* 574 F.2d 723, 724–26 (2d Cir. 1978); *I/S Stravborg v. Nat'l Metal Converters, Inc.,* 500 F.2d 424, 426–27 (2d Cir. 1974); *Audi NSU Auto Union Aktiengesellschaft v. Overseas Motors, Inc.,* 418 F.Supp. 982, 984–85 (E.D.Mich. 1976). The court in *Kallen, supra,* 574 F.2d at 726, faced with a situation analogous to that of the present case, reasoned that

> while it is true that the Employer has resisted enforcement of the award, it nevertheless participated fully in the arbitration process before the American Arbitration Association. In such circumstances, the Employer can hardly avow that an award will be "final, conclusive and binding" upon it without implicitly agreeing that federal court intervention may be sought to compel compliance.

In *Kallen,* the court invoked both the Arbitration Act and the Labor-Management Relations Act to confirm an arbitration award rendered pursuant to a collective bargaining contract. *Accord, Marine Transit Corp. v. Dreyfus,* 284 U.S. 263, 276, 52 S.Ct. 166, 169, 76 L.Ed. 282 (1932) (In upholding the district court's confirmation of an arbitration award under § 8, Title 9's admiralty provision, the Court found that the agreement's stipulation that an arbitration award be "final and binding" was sufficient to refute the petitioner's argument that § 9 precluded the judgment because the contract contained no language explicitly authorizing the entry of judgment).

*The Due Process Claim*

Although we find § 9 of the Arbitration Act applicable in this case, we cannot accept the argument that Fed.R.Civ.P. 81(a)(3) automatically preempts procedures which otherwise would obtain under Rules 12(b) and 56. Nothing in § 9 precludes application of these rules. Courts have applied various sections of the Rules of Civil Procedure in actions under the Arbitration Act. *See, e. g., Compania Espanola de Petroleos, S. A. v. Nereus Shipping, S. A.,* 527 F.2d 966 (2d Cir. 1975), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976) (Rule 42(a) consolidation); *In re Hidrocarburos y Derivados, C. A.;, and Lemos,* 453 F.Supp. 160 (S.D.N.Y.1977) (Rule 4(d)(7) service of complaint); *Robinson v. Warner,* 370 F.Supp. 828 (D.R.I.1974) (Rule 42(a)); *In re Int'l Union of Electrical, Radio & Machine Workers, AFL–CIO and Westinghouse Electric Corp.,* 48 F.R.D. 298 (S.D.N.Y.1969) (discovery); *In re Lodge 506, Int'l Assoc. of Machinists and General Electric Co.,* 211 F.Supp. 654 (N.D.N.Y.1959) (motion to dismiss).

The Union submits no compelling reason why normal procedures should be subverted where, as here, the parties proceeded in traditional adversary fashion. The Union, for example, filed its petition for enforcement by a summons calling for an answer within twenty days as opposed to the typical commencement of a proceeding under the Arbitration Act by application and notice of the motion to confirm the award. 9 U.S.C. § 9. The Union's petition was captioned as a regular adversary proceeding rather than "*In re* . . .". The Union stipulated to an extension of time for the Employer to *answer* or otherwise plead. The Employer explicitly responded under Rule 12(b)(6). The Union expressly answered this motion to dismiss with a "Reply To Respondent's Motion To Dismiss." We therefore conclude that Rule 12(b) was applicable in this case.

Because the district court granted enforcement of the award, it necessarily treated the Employer's 12(b)(6) motion as a motion for summary judgment. Although this conversion is appropriate when the court determines that no triable issues of material fact exist, *Chicago-Midwest Meat Assoc. v. City of Evanston,* 589 F.2d 278, 281–82 (7th Cir. 1978), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979), Rule 12 outlines the applicable procedure for conversion which was not entirely followed here.

Initially, Rule 12 requires that conversion occur only when "matters outside the pleadings are presented to and not

excluded by the court." The Employer asserts that no matters outside the pleadings ever were presented to the court in this case. It is true that memoranda of points and authorities generally are held not to constitute matters outside the pleadings. *Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir. 1977) (per curiam); *Sardo v. McGrath*, 196 F.2d 20, 23 (D.C.Cir.1952). In this case, however, the parties have submitted numerous exhibits which include the collective bargaining contract at issue, the Warns' arbitration award and the arbitration panel's company members' dissent thereto, the prior Solomon award which related to a similar dispute between the parties, and various letters relevant to the arbitration proceedings. These exhibits constitute matters outside the pleadings sufficient to convert a 12(b)(6) motion into a motion for summary judgment.[4] Affidavits "as such ... are not indispensably required where exhibits annexed to a ... complaint ... demonstrate that the contention of the party is something different from the bare-bones formal allegations." *Bradford v. School District No. 20*, 364 F.2d 185, 187 (4th Cir. 1966), quoting *Smoot v. State Farm Mut. Auto. Ins. Co.*, 299 F.2d 525, 528 (5th Cir. 1962). *See, e. g., General Guar. Ins. Co. v. Parkerson*, 369 F.2d 821, 823 (5th Cir. 1966) (exhibits); *Pintozzi v. Scott*, 436 F.2d 375, 378 n.3 (7th Cir. 1970) (exhibits); *Smith v. United States*, 362 F.2d 366, 367–68 (9th Cir. 1966) (exhibit); *Oahu Gas Serv., Inc. v. Pacific Resources, Inc.*, 460 F.Supp. 1359, 1364 (D.Hawaii 1978) (exhibits and tables).

4. The defendant argues that dicta in *Macklin v. Butler, supra,* 553 F.2d at 528 n.1, preclude a court from ever treating exhibits attached to a memorandum as matters outside the pleadings. We disagree. *Macklin* did not use such broad language, but merely stated that the memorandum and accompanying documents submitted in that case did not meet the requirements of Rule 56(e). The *Macklin* court was primarily dissatisfied with the unsworn nature of the memorandum in support of the motion to dismiss. The nature of the exhibits in *Macklin* was not set out in that opinion.

In the present case, the documents submitted as exhibits constituted the basic evidence upon which the court was bound to resolve the merits of this case. It is well settled that courts are strictly limited in reviewing arbitration awards to determine (1) whether the award draws its essence from the contract and (2) whether "the

The Employer next contends that even if the exhibits did satisfy Rules 12(b) and 56, the district court erred by failing to give the parties notice that it intended to treat the 12(b)(6) motion as one for summary judgment. While we agree that the conversion of a 12(b)(6) motion into a summary judgment motion *should* be accompanied by prior notice and "a reasonable opportunity to establish the existence of material controverted facts," the failure to afford such procedure does not necessarily mandate reversal. *Chicago-Midwest Meat Assoc. v. City of Evanston, supra,* 589 F.2d at 282. Where the record discloses the existence of unresolved material fact issues, or where the parties represent that they would have submitted specific controverted material factual issues to the trial court if they had been given the opportunity, we would have to find that summary judgment was inappropriate. *Choudhry v. Jenkins,* 559 F.2d 1085, 1090 (7th Cir.), *cert. denied,* 434 U.S. 997, 98 S.Ct. 634, 54 L.Ed.2d 491 (1977); *Macklin v. Butler, supra,* 553 F.2d at 528. But where no potential disputed material issue of fact exists, a summary judgment will not be disturbed even though the district court disregarded the procedure which should have been followed. *Chicago-Midwest Meat Assoc. v. City of Evanston, supra,* 589 F.2d at 282. Consequently, the resolution of the Employer's due process claim depends upon whether any material disputed factual issue existed which was either evident from the record itself, or

arbitrator's words manifest an infidelity to this obligation." *F. W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local 781,* 629 F.2d 1204, 1215 (7th Cir. 1980); *Amoco Oil Co. v. Oil, Chemical & Atomic Workers Int'l Union, Local 7–1, Inc.,* 548 F.2d 1288, 1293–94 (7th Cir.), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977). Moreover, the "determination of whether or not the Board exceeded its authority in making the Award must be made by reference to the four corners of the instrument constituting the agreement between the parties." *Gibbons v. United Transp. Union,* 462 F.Supp. 838, 844 (N.D.Ill.1978). It is difficult to imagine documents more reliable and relevant to the determination of the controversy than those exhibits attached to the complaint and brief in support of the motion to dismiss in this case.

which the Employer could have submitted if given the opportunity.

■ The Employer has not alleged any specific disputed factual issues sufficient to preclude summary judgment in its brief on appeal. Nor, even though explicitly asked, did the Employer reveal the existence of any such issues in oral argument. The only apparent allegations of disputed factual issues which the Employer might have presented to the trial court if given the opportunity were in fact submitted to that court in the Employer's brief in support of its motion to stay the judgment pending appeal. There the Employer asserted that "had the Court given some indication of its intent to make a final disposition of this case, respondent would have supplied affidavits directly controverting (1) the contention that there was adverse 'impact' on composing room employees caused by the introduction of the VDT system [termed 'undisputed' by the district court] and (2) the allegation of . . . the Petition that sixty days of negotiations took place pursuant to part 3 of the Warns award." (Footnote omitted.)

The district court responded to the first contention by stating that the court's "use of the word 'undisputed' was perhaps unfortunate, but in any case the impact issue was one within the arbitrator's and not the Court's jurisdiction, was decided by the arbitrator adversely to the respondent, and is not subject to revision by the Court." Secondly, the court reasoned that its order "merely required the parties to comply forthwith with paragraph 3 of the award and did not make a finding as to the degree of compliance which had already been achieved. Thus the order did not by its terms accept the petitioner's claim." The court invited the Employer to move the court for a clarification of its order.

■ Remanding this case to allow the Employer to assert these allegations would be futile. It is irrelevant whether or not the district court's characterization of the

VDT system's adverse impact on composing room employees as "undisputed" could be rebutted. The issue before the district court, as discussed in detail separately hereinafter, was whether or not the arbitrator exceeded the scope of his authority when he determined that the Employer had a contractual duty to bargain over the VDT system's "impact." To the extent that the degree of impact is at all relevant in this case, it would be a question to be resolved by the arbitrator, assuming *arguendo* that he had authority to impose a duty to bargain over impact.[5] Judicial review of an arbitration award is limited to determining (1) whether the award draws its essence from the contract and (2) whether "the arbitrator's words manifest an infidelity to this obligation." *F. W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local 781*, 629 F.2d 1204, 1215 (7th Cir. 1980); *Amoco Oil Co. v. Oil, Chemical & Atomic Workers Int'l Union, Local 7–1, Inc.*, 548 F.2d 1288, 1293–94 (7th Cir.), *cert. denied*, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977). Consequently, in *Int'l Union of Operating Engineers, Local Union 139 v. Carl A. Morse, Inc.*, 529 F.2d 574, 581 (7th Cir. 1976), this court reasoned that the

employer has complained that the proceedings below partook of the nature of a motion for summary judgment, but deprived it of the opportunity to present affidavits in support of its defenses in opposition to arbitration. We have assumed, for the purposes of this decision, that the employer's positions can be adequately backed up by evidence sufficient to create genuine issues of fact. But those issues are to be resolved by the arbitrator, not by the court. Whether under summary judgment procedures or upon a petition to compel arbitration under the United States Arbitration Act, . . . the issues open for judicial consideration are limited and rarely factual. Here they raise only questions of law, . . . .

---

5. Even if the degree of impact had been an issue within the purview of the district court, it is well settled that even genuine disputed issues of fact will not preclude summary judgment unless they are material to the legal issues in the case. *Terket v. Lund*, 623 F.2d 29, 31 (7th Cir. 1980). The degree of impact caused by the imposition of the VDT system is not material to whether or not a contractual provision existed in the contract from which the arbitrator could have imposed a duty to bargain over impact.

The second allegation which the Employer would have raised, that sixty days of negotiations had not in fact taken place, would likewise have no significance on the court's order enforcing the award. The court merely ordered the parties to comply with Paragraph 3 of the arbitrator's award which directed the parties to negotiate for sixty days and then return to arbitration if the parties were unable to reach an agreement. The court did *not* find that the parties had already complied with the sixty days bargaining directive.

Because we find the Employer's due process claim to be without merit, we reach the issue of whether or not the district court ruled correctly by finding that the arbitrator did not exceed his authority and by ordering enforcement of the award.

## II.

■ In Part 2 of his award, Arbitrator Warns found that "the introduction of the Hendrix [VDT] system, a technological change, has sufficient impact on the job elements of the Composing Room as to warrant the imposition of a duty to bargain about such impact." [6] A determination of whether or not the arbitrator exceeded his authority must be made by reference to the contract because, as the Supreme Court has ruled,

> an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.

When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

■ The arbitrator's authority to enter Part 2 of his award, if any, derives from the "new process" clause of § 4 of the collective bargaining agreement which provides, in relevant part, that

> In the event of the introduction into Composing Room work of any process, machinery or equipment which functions as a substitute for, or evolution of, the typesetting and typecasting processes that were in use at the date this contract became effective, all questions concerned with *the method of operation, the complement of men required or the retraining of affected employees* shall be determined by the Joint Standing Committee, . . . . [7]

(Emphasis added.) The "new process" clause explicitly limits questions which may be submitted to arbitration in the event of the introduction of a substitute process to (1) method of operation, (2) complement of men and (3) retraining. The district court acknowledged these limitations, but assumed, without examination, that a directive to bargain over "impact" fitted within these categories. [8]

Negotiating over the impact of the VDT system on composing room employees would include bargaining over a broad range of items including, but not limited to, issues such as involuntary layoff, termination, bonuses and loss of overtime. A directive to

---

**6.** The propriety of Part 1 of the award, which confirmed the Employer's right to introduce the VDT system and to "make appropriate work assignments," is not at issue. The Union contends that the entire award was within Arbitrator Warns' authority. The Employer agrees that Part 1 of the award was appropriate, but contests the validity of Parts 2 and 3.

**7.** If the Joint Standing Committee is unable to reach an agreement, § 7 of the contract provides that the dispute shall be submitted to arbitration. *See supra*, note 3.

Section 5 establishes that the "parties agree that . . . the complete obligation of each to the other is expressed herein."

**8.** The court concluded that

> The respondent concedes that the contract requires negotiation or arbitration over the method of operation, the complement of men required, or the retraining of affected employees arising from new Composing Room technology. What constitutes "new composing room technology" is a matter of contract interpretation for the arbitrator and not for this court to decide. Once having decided that technological change in the Editorial Department was included within the spirit of that phrase, Arbitrator Warns was entitled to impose the remedy provided for in the contract when such change occurred.

bargain over this broad range of issues injects items into negotiation which were not contemplated by the "new process" clause of the collective bargaining contract. Even the most general of the three categories, method of operation, clearly refers to *how* the system will be run and is not a catchall term which imposes a duty to bargain about anything conceivably affected by the new technology. Consequently, because Part 2 of the arbitration award does not draw its essence from the contract, it cannot be enforced. *See, e. g., City Electric, Inc. v. Local Union 77, Int'l Brotherhood of Electrical Workers*, 517 F.2d 616, 619–20 (9th Cir.), *cert. denied*, 423 U.S. 894, 96 S.Ct. 194, 46 L.Ed.2d 127 (1975) (court refused enforcement of arbitration award directing the parties to negotiate the rate of a travel allowance because the award was not authorized by the collective bargaining agreement.)

The district court acknowledged the Employer's contention that "in making his award, Arbitrator Warns relied in part on certain policies of the Labor-Management Relations Act and on the decisions of other arbitrators in similar actions, rather than basing his award solely on the language of the contract at issue." The court responded by quoting *Enterprise Wheel, supra*, for the proposition that an ambiguous opinion accompanying an arbitration award will not prohibit enforcement of the award, *Enterprise Wheel, supra*, 363 U.S. at 598–99, 80 S.Ct. at 1361–62.

While we adhere to the Supreme Court's admonition in *Enterprise Wheel* in appropriate cases, *Amoco Oil Co., supra*, 548 F.2d at 1294–95, this is not such a case. We do not regard it as necessary to discuss the arbitrator's reasoning because we find that the award itself demonstrates an infidelity to the plain restrictive terms of the contract.

The Employer contended, in oral argument, that Part 3 of the award, ordering bargaining, also exceeded the arbitrator's authority. We do not need to determine this issue inasmuch as the direction to bargain related only to the "impact" matter.

1. Chief Judge Fairchild and Judges Swygert and Cudahy would have granted the *en banc* rehearing request.

For the reasons stated herein, the judgment granting enforcement of Parts 2 and 3 of the arbitration award is reversed. Costs against the plaintiff-appellee.

REVERSED.

### On Rehearing

In its rehearing petition, the Union expressed uncertainty regarding the effect of the court's decision in this case, particularly whether the decision permits further arbitration pursuant to the Warns' award, or whether any future arbitration regarding the VDT system must begin anew. This court clearly invalidated both Parts 2 and 3 of the Warns' award. Thus, the Warns' award contains no valid bargaining directive which would require bargaining or further arbitration pursuant to that particular award.

On consideration of the petition for rehearing and suggestion for rehearing *en banc* filed in the above-entitled cause by Milwaukee Typographical Union No. 23, plaintiff-appellee, a majority[1] of judges have voted to deny rehearing *en banc*, and all of the judges on the original panel have voted to deny a rehearing. Accordingly,

IT IS ORDERED that the aforesaid petition for rehearing be, and the same is hereby, DENIED.